James Morgan WILLIAMS Plaintiff

v.

**HARTFORD LIFE INSURANCE COMPANY Defendant**

**Hartford Life and Accident Insurance Company Counter–Plaintiff**

v.

**James Morgan Williams Counter–Defendant.**

**No. CIV.A. 305CV110LS.**

United States District Court, S.D. Mississippi, Jackson Division.

July 10, 2006.

Joseph E. Roberts, Jr., Pittman, Germany, Roberts & Welsh, Jackson, MS, Eugene Coursey Tullos, Tullos, Tullos & Tullos, Raleigh, MS, for Plaintiffs.

Steven H. Begley, John E. Hughes, III, Wells, Marble & Hurst, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of Hartford Life and Accident Insurance Company (Hartford) for summary judgment as to James Morgan Williams' claims against it and as to its counter-claim against Williams. Williams has responded

in opposition, and the court, having considered the memoranda and submissions of the parties, along with the administrative record, concludes that Hartford's motion should be granted.

Williams commenced this action in July 2004 seeking actual damages on account of Hartford's discontinuance of long-term disability benefits under the employee welfare benefit plan established by his former employer, Helmerich & Payne, Inc.[1] With its answer, Hartford asserted a counterclaim against Williams for overpaid benefits.[2] Hartford has moved for summary judgment as to all claims asserted against it, as well as its counterclaim.

On February 2, 1999, while employed as an electrician with Helmerich & Payne and working in Argentina, Williams injured his knee, an injury which rendered him totally disabled beginning in June 1999. Thus, on July 20, 2000, Williams submitted an application for long-term disability benefits to Hartford. His claim was initially approved and, after taking into account the 180–day elimination period under the policy, Hartford commenced paying Williams long-term disability benefits, retroactive to December 19, 1999.

Under the policy, a participant is entitled to receive benefits during the first twenty-four months of disability if he is unable to perform one or more of the essential duties of his occupation. After the first twenty-four months of disability, a participant is entitled to continued benefits if he is unable to perform the essential duties of *any* occupation for which he is qualified by education, training or experience. Accordingly, on June 21, 2001, Hartford notified Williams that his first twenty-four months of disability coverage would run out on December 19, 2001; that in order to continue receiving disability benefits, he must be considered unable to perform the duties of any occupation for which he was qualified; and that it had begun an investigation to determine if he was eligible to receive continued benefits. Hartford ultimately determined that Williams was not disabled from performing any occupation for which he was qualified, but could perform sedentary work, and accordingly notified Williams by letter dated September 6, 2002 that it had discontinued disability payments effective August 30, 2002. Following an unsuccessful appeal of that decision, Williams filed the present lawsuit.

■ The issue before the court is whether Hartford abused its discretion in terminating long-term disability payments to Williams. *See Albert v. Life Ins. Co. of North America*, 2005 WL 3271283, *4 n. 3 (5th Cir. Dec.2, 2005) (where plan gives the administrator discretion to make claim determinations, "the court must apply an abuse of discretion standard in reviewing the administrator's decision," which standard requires that the administrator's factual determinations be supported by substantial evidence) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).[3] The

---

1. The case was filed in the Circuit Court of Smith County, Mississippi, but removed by Hartford on the bases of federal question, because the benefit plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and diversity jurisdiction.

2. Helmerich & Payne served as the plan sponsor and plan administrator, and the long-term disability benefits portion of the plan was funded by a group long-term disability insurance policy issued by Hartford. As such, Hartford functioned as the insurer and the claim administrator.

3. The plan and policy give Hartford "full discretionary authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."

Fifth Circuit has described the abuse of discretion standard in the following way:

Under the abuse of discretion standard, "federal courts owe due deference to an administrator's factual conclusions that reflect a reasonable and impartial judgment." In applying this standard of review, we consider whether the administrator acted arbitrarily or capriciously. *Dowden v. Blue Cross & Blue Shield of Tex., Inc.,* 126 F.3d 641, 644 (5th Cir. 1997). We have stated that "[a]n arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 828 (5th Cir.1996)). Ultimately, our review for abuse of discretion "need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 297 (5th Cir. 1999) (en banc).

*Horton v. Prudential Ins. Co. of America,* 51 Fed.Appx. 928 (5th Cir.2002) (additional citations omitted). Notwithstanding, as Williams points out, because Hartford acts as both the insurer and the claims administrator, it operates under a conflict of interest because it "potentially benefits from every denied claim." *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 295 (5th Cir.1999). The court thus applies a "sliding scale standard," *id.* at 297, and grants Hartford's decision "less than full deference," *Gooden v. Provident Life & Acc. Ins. Co.,* 250 F.3d 329, 333 (5th Cir. 2001).

In its motion for summary judgment, Hartford submits that the administrative record contains substantial evidence showing a rational and reasonable basis for its decision to terminate Williams' benefits and that it is therefore entitled to summary judgment as to Williams' claim against it. In response, Williams argues that Hartford abused its discretion by relying on an opinion by his family physician, Dr. Pasco, which he contends was grossly misconstrued; by failing to consider the reports of his psychologist, Dr. Eicke, and of his orthopedist, Dr. Barrett; and by failing to give any consideration to the Social Security Administration's finding of disability. The court considers these arguments in turn.

The administrative record reflects that as part of its evaluation of Williams' condition, Hartford obtained Williams' medical records from Dr. Munn, his orthopedic surgeon, and Dr. Pasco, his family physician, and forwarded them for review, along with all the other medical information contained in the administrative record, to Dr. Wagner, a physician specializing in physical medicine and rehabilitation. In addition to reviewing the medical records, Dr. Wagner spoke with Dr. Pasco by phone on August 7, 2002.[4] In the report subsequently issued by Dr. Wagner on August 14, 2002, she related that Dr. Pasco had stated that "Mr. Williams was functional at a sedentary level with a restriction of no lifting greater than 10 lbs., no squatting, climbing or kneeling." Based on her review of Williams' records and Dr. Pasco's assessment, Dr. Wagner opined that Williams was "functional at a sedentary level with restrictions of no lifting greater than 10 lbs. and no kneeling, squatting, or climbing." She further recommended that Williams "not stand or walk for longer than 30 minutes at any one time."

Hartford forwarded Dr. Wagner's report to John S. Melendez, a rehabilitation clinical case manager employed by Hartford, who prepared an employability analysis re-

4. She also attempted to contact Dr. Munn on several occasions without success.

port, taking into account Williams' education, training and work history, as well as the sedentary-level work limitation articulated by Dr. Wagner. Using a computerized job-matching system, Melendez concluded that Williams had "sufficient skills that would allow him to be readily employable at this time with earning equal to or exceeding" his pre-disability wage.

■ Williams argues that Dr. Pasco's statement was "grossly misconstrued" by Dr. Wagner and by Hartford, as evidenced, he contends, by an October 24, 2005 letter from Dr. Pasco in which he states,

> I am writing in an attempt to clarify a previous statement attributed to me regarding Mr. Williams' general disability. When I was quoted as saying that Mr. Williams could function at a sedentary level without any significant lifting, bending, stooping etc., I did not mean to imply that he was not totally disabled. What I meant was that he could function in every day living such as sitting at a table or sitting in a chair and attending to the necessities of every day living. I in no way meant that he was able to function at a public job. Aside from Mr. Williams' orthopedic problems, he also suffers from depression and degenerative joint disease. He takes several medication, which in my opinion, would also interfere with his ability to hold gainful employment. In my opinion, Mr. Williams is totally disabled to do gainful employment.

Williams further suggests that notwithstanding Dr. Wagner's interpretation of and reliance on Dr. Pasco's statement, Hartford should have realized that Dr. Pasco considered him totally disabled, given that on August 17, 2002, approximately three days after his conversation with Dr. Wagner, Dr. Pasco had completed a "Certificate of Attending Physician" form on which he marked "yes" in response to a question whether the patient was "totally disabled from all occupations." Williams submits that this evidence tends to show that Hartford acted unreasonably in denying benefits based on information it knew or should have known was inaccurate, and consequently, summary judgment should be denied because there are issues of material fact as to whether Hartford acted in good faith in denying benefits and whether the basis for denying benefits is accurate.

For its part, Hartford notes the absence of any evidence in the administrative record to suggest that Dr. Wagner's statements regarding her conversation were incorrect and asserts that its reliance on Dr. Pasco's opinion, as related by Dr. Wagner, does not amount to an abuse of discretion. It points out, in fact, that approximately a week after her conversation with Dr. Pasco, Dr. Wagner sent him a letter summarizing their conversation and inviting him to make any additional comments or changes to her summary within one week, barring which, the summary would be submitted to and relied upon by the insurer; and yet, Dr. Pasco did not respond. Hartford stresses that the recent letter authored by Dr. Pasco and submitted by plaintiff in support of his assertion that Dr. Pasco's statements to Dr. Wagner were misconstrued, was written nearly three years after the conversation between Dr. Wagner and Dr. Pasco and approximately one year after the instant litigation was filed; and even in this letter, Dr. Pasco does not deny his statement to Dr. Wagner, but merely undertakes to explain that by saying that Williams was functional at a sedentary level, he "did not mean to imply that he was not totally disabled." Finally, Hartford points out that this letter is in any event not part of the administrative record, as it was not submitted to Hartford prior to its benefit determination, and that it therefore cannot be used to show that Hartford abused its discretion. *See Vega,* 188 F.3d

at 299 (in making determination whether administrator abused its discretion, the court is "constrained to the evidence before the plan administrator").

The recent letter from Dr. Pasco, in fact, is not part of the administrative record, and thus cannot support a conclusion that Hartford abused its discretion in relying on Dr. Pasco's statements to Dr. Wagner, or Dr. Wagner's conclusions based, in part, thereon. Moreover, the "Certificate of Attending Physician" which Williams also references is nothing more than a conclusory statement that Williams is disabled, unsupported by explanation or foundation. *See Simoneaux v. Continental Cas. Co.,* 101 Fed.Appx. 10, 12 (5th Cir.2004) ("Continental was neither irrational nor arbitrary in failing to give overriding weight to the treating physician's statement that Simoneaux was totally disabled, a generalized statement not supported by objective medical findings."). As such, it cannot be said that Hartford acted unreasonably in relying on Dr. Pasco's specific statements to Dr. Wagner that Williams was functional at a sedentary level, in spite of the contemporaneous "disabled" designation on a prepared form.

█ Williams further contends that Hartford abused its discretion in failing to consider the reports of his psychologist, Dr. F.J. Eicke, and his orthopedist, Dr. Patrick Barrett, in making its ultimate disability determination. He argues that there was sufficient documentation that he suffered from mental disorders and moderate degenerative disc diseases to put Hartford on notice of these conditions and that Hartford should have contacted these physicians to obtain his treatment records. The court concludes otherwise.

The law in this respect is clear: ERISA does not impose upon Hartford a duty to investigate, and instead, Williams has a duty under the plan to submit proof of loss satisfactory to Hartford to support his claims. As explained by the Fifth Circuit,

> There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.
>
> Instead, we focus on whether the record adequately supports the administrator's decision. In many cases, this approach will reach the same result as one that focuses on whether the administrator has reasonably investigated the claim. The advantage to focusing on the adequacy of the record, however, is that it (1) prohibits the district court from engaging in additional fact-finding and (2) encourages both parties properly to assemble the evidence that best supports their case at the administrator's level.

*Vega,* 188 F.3d at 298.

█ With respect to Dr. Barrett specifically, Hartford contends that it did consider his report of Williams' condition and found that his assessment was consistent with Dr. Pasco's earlier appraisal of Williams' back pain and recommended treatment. As Hartford explained in a March 28, 2003 letter to Williams,

> Included with your appeal request is a report describing an initial consultation you had with J. Patrick Barrett, M.D. This evaluation appears to be the orthopedic evaluation that Dr. Pasco described to Dr. Wagner during their August 7, 2002 telephone conversation. As indicated, Dr. Pasco referred you to Dr. Barrett for evaluation of your back pain. Dr. Barrett's impression was "Severe

degenerative disc disease, lumber spine and moderate degenerative disc disease, cervical spine." Dr. Barrett recommended you continue with your current medication regimen and undergo rehabilitation and strengthening exercises to the low back. Despite the fact that this report was not available to Dr. Wagner when she completed her August 14, 2002 report, the results of this consultation were consistent with Dr. Pasco's appraisal of your back pain. Dr. Barrett's impression of degenerative disc disease were [sic] already well documented within your file and supported by imaging studies. Furthermore, Dr. Pasco's conservative treatment recommendations of continuing non-steroidal anti-inflammatory medications, muscle relaxants and physical therapy were reinforced by Dr. Barrett.

In the court's opinion, the record reflects that Hartford did adequately consider Dr. Barrett's report and reasonably concluded that his report was consistent with Dr. Pasco's evaluation and Dr. Wagner's conclusions.

■ With regard to Dr. Eicke, Hartford submits that of the four letters from Dr. Eicke which Williams has included with his response, only one, dated April 16, 2003, was forwarded to Hartford after Williams' appeal was denied on March 28, 2003. In its letter denying Williams' appeal, Hartford responded to Williams' claim that he was suffering from depression, stating,

> [T]here is very little information pertaining to the treatment you received for this problem ... [P]sychiatric treatment records have not been submitted for review and the nature of the treatment

you received as the result of this diagnosis is unclear.

Hartford took the position then, and takes the position now, that at the time Dr. Eicke's letter was received, the administrative remedies provided by ERISA had been exhausted, that it was unable to conduct further review of the claim, and that while the letter would be retained in Williams' file, it would not be part of the administrative record. Hartford further contends that Dr. Eicke's letter was conclusory, in any event, in that it was not accompanied by any treatment notes, medical documentation or functional analysis.

Hartford also submits that Williams' claims regarding his psychological state presented an entirely new basis for his alleged disability, that being mental illness, while the record shows that his original claim for disability payments was based solely on his physical disability. Hartford points out that whereas Dr. Eicke's letter states that he has been treating Williams since February 2002, under the terms of the policy, a participant must provide written proof of loss "within 90 days after the start of the period for which The Hartford owes payment." Hartford thus asserts that it was not obligated to consider a conclusory letter from Dr. Eicke asserting a new basis for disability submitted over one year after treatment had commenced.[5] The court cannot conclude that Hartford abused its discretion in refusing to consider Williams' claim of mental disability under the circumstances.

■ Williams finally claims that "there are genuine issues of material fact to preclude summary judgment regarding the

---

5. In addition, Hartford claims that the policy provides for benefits resulting from total disability due to mental illness for a period of twenty-four months. If, as Williams contends, his depression began in February 2000 when Dr. Munn recommended a psychiatric consultation and prescribed medication, he would only have been entitled to benefits for two years, and Hartford paid Williams disability benefits through August 31, 2002, i.e., for more than two years.

administrator's consideration of the Social Security Administration's (SSA) finding of total disability." While Williams acknowledges that a finding of disability by the SSA is not binding upon Hartford, he contends that the SSA determination should be considered as a factor in determining if Hartford's decision was arbitrary and capricious. *See Horton v. Prudential Ins. Co. of America,* 51 Fed.Appx. 928 (5th Cir.2002) ("[W]hile an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination.") (citations omitted).

In response, Hartford points out that the administrative law judge also found that Williams was capable of sedentary work based on his physical limitation, but unlike Hartford, determined that based on his background and experience, Williams did not have any "skills transferable to sedentary work." This fact was also pointed out in Hartford's March 28, 2003 letter to Williams, noting that "there is a consensus between your treating physician, Dr. Pasco, Dr. Wagner of UDC and the Social Security Administration that you retain the ability to perform sedentary work." In short, the record reflects that Hartford did consider the opinion of the SSA and correctly found that it was not bound by the SSA decision. The fact that Hartford disagreed with the SSA's conclusion that Williams lacked transferable skills does not amount to an abuse of discretion.

█ Hartford's counterclaim asserts that it is entitled to recover from Williams

$27,186.87 in overpaid benefits.[6] In support of its motion with respect to that counterclaim, Hartford has presented the declaration of Christopher Davis, an appeals specialist with Hartford, who confirms the amount due; a copy of the "LTD Payment Options and Reimbursement Agreement" signed by Williams on January 25, 2001, which reflects that he chose to receive his "monthly Long Term Disability benefit with no reduction for estimated Other Income Benefits" with the understanding "that this may result in an overpayment of my LTD benefits which I will be required to refund to The Hartford in a lump sum;" and a copy of the decision of the SSA awarding disability benefits to Williams and his spouse retroactively to July 7, 1999. In response, Williams argues that there are genuine issues of material fact as to whether Hartford is the real party in interest, because Hartford turned over the collection of Williams' debt to a collection agency.[7] Hartford, however, insists that it did not assign its contractual rights simply by turning the collection over to a collection agency, and the court agrees.

Based on the foregoing, the court is of the opinion that Hartford is entitled to summary judgment, and its motion will therefore be granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**6.** Hartford contends that on January 25, 2001, Williams opted to receive his full disability benefits, without an offset for estimated other income benefits, that is social security benefit payments, and agreed to refund to Hartford any overpayment he may receive. On May 30, 2001, Williams was awarded social security benefits retroactive to July 7, 1999. According to Hartford, Williams owes

in excess of $27,000 as reimbursement for overpayment.

**7.** Williams generally contends in his brief that Hartford "has not provided sufficient evidence showing what amount is actually owed," but has not presented any evidence to contradict the declaration of Christopher Davis.